898 So.2d 105 (2005)
John Joseph SULLIVAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-5063.
District Court of Appeal of Florida, Second District.
February 16, 2005.
Rehearing Denied April 8, 2005.
*106 James Marion Moorman, Public Defender, and Jean-Jacques A. Darius, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
John Joseph Sullivan appeals the judgment and three-year mandatory minimum sentence imposed on him for committing an aggravated assault on a law enforcement officer. Because the State failed to present sufficient evidence that the officer had a well-founded fear that violence was imminent, we reverse Sullivan's judgment and sentence.

The Facts
Sullivan spent the last few days of 2002 on a crack cocaine binge. In the early morning hours of New Year's Day 2003, he called 911 and summoned Hillsborough County sheriff's deputies to the mobile home in Riverview where he and his wife resided. The evidence at Sullivan's trial established that his call was part of an ill-conceived scheme to commit "suicide-by-cop."[1] It is a tribute to the skill and professionalism of the two deputies who responded to the call that they were able to defuse the explosive situation that Sullivan's behavior created without serious incident.
Deputy Derrick Lockett arrived first at the scene at approximately 5:10 a.m. Sullivan's mobile home was located perpendicular to the road, with a driveway leading to the home's porch and entrance. Deputy Lockett parked his cruiser approximately six feet from the mobile home. On the porch, Deputy Lockett spoke with Sullivan, who appeared "agitated." Deputy Lockett could see inside the mobile home, and it was in a shambles. The furniture had been tipped over, and there was broken glass everywhere. Concluding that a domestic disturbance had occurred, Deputy Lockett called for backup. Deputy Mark Wilder responded to Deputy Lockett's call. He parked his cruiser approximately eight feet behind Deputy Lockett's cruiser.
Deputy Wilder stayed with Sullivan on the porch while Deputy Lockett spoke with Sullivan's wife inside the mobile home. According to Deputy Wilder, Sullivan "[a]dvised me that he was going to make me kill him before I left." A few minutes after Deputy Lockett spoke with Sullivan's wife, her son-in-law arrived to take her away from the scene and parked in the street. As Deputy Lockett was escorting Sullivan's wife toward the son-in-law's waiting vehicle, Sullivan made a move toward her. Deputy Wilder restrained him briefly, but Sullivan broke free and ran into the home. As Sullivan ran inside, he yelled, "I'm going to get you," referring to his wife.
*107 Because of Sullivan's agitated state and his prior threats, the deputies assumed he might emerge from the home armed with a weapon. Both deputies took up defensive positions. Immediately after Sullivan ran inside the home, Deputy Lockett retreated behind Deputy Wilder's cruiser, positioning Sullivan's wife behind him. Deputy Lockett drew his weapon, and once behind the cruiser, he was "just waiting for [Sullivan] to come out."
Simultaneously, Deputy Wilder drew his weapon and moved to position himself between the entrance to the mobile home and Deputy Lockett, who was protecting Sullivan's wife. By the time Sullivan emerged from the home, Deputy Wilder had taken partial cover near the side of his vehicle and was directly between Sullivan and Deputy Lockett.
When Sullivan emerged from the mobile home, he was brandishing a kitchen knife. Deputy Lockett testified that Sullivan gripped the knife with the tip of the blade pointing vertically. Deputy Wilder said that Sullivan held the knife over his head with the blade extending horizontally. Sullivan appeared to be angry and was "[b]reathing real hard." Sullivan charged toward the deputies from the mobile home. The deputies commanded him to drop the knife four or five times before Sullivan finally stopped and dropped the knife. Sullivan came to within five to fifteen feet of Deputy Wilder. He came no closer than thirty feet to Deputy Lockett. After dropping the knife, Sullivan charged headfirst into the side of the mobile home, causing a sizeable dent in it. The deputies finally subdued Sullivan and arrested him.

Procedural History
The State charged Sullivan with two counts of committing an aggravated assault on a law enforcement officer. Count One related to Deputy Lockett; Count Two concerned Deputy Wilder. At Sullivan's trial, defense counsel moved for a judgment of acquittal on both counts on the ground that the State had not proven that either deputy had a well-founded fear of imminent harm resulting from Sullivan's threats. The trial court orally announced that it would deny the motion as to Count Two (aggravated assault on Deputy Wilder  "the Wilder Count") and reserve ruling on Count One (aggravated assault on Deputy Lockett  "the Lockett Count"). The jury returned guilty verdicts on both counts. Based on the transcript, we theorize that the trial court intended after the conclusion of the trial to deny Sullivan's motion for judgment of acquittal as to the Wilder Count and to grant the motion as to the Lockett Count. The trial court  through apparent inadvertence  did the opposite in its written judgment. As a result, Sullivan was acquitted on the Wilder Count and adjudged guilty and sentenced on the Lockett Count.
We observe that the State did not seek to correct the written judgment in the trial court to conform it to what we believe was intended by the trial judge.[2] Moreover, after reviewing the record and preparing its brief for filing in this court, the State has not requested us to relinquish jurisdiction of this case to the trial court so that it might seek such relief there. The State has also not filed a notice of cross-appeal from the trial court's judgment acquitting Sullivan on the Wilder Count.[3] *108 Instead, the State argues that it presented sufficient evidence to withstand a motion for a judgment of acquittal on the Lockett Count. Thus our task in this case is limited to reviewing the trial court's denial of the motion for judgment of acquittal on the Lockett Count.[4]

The Standard of Review
The standard for the review of a trial court's decision on a motion for a judgment of acquittal is de novo. An appellate court will not reverse a conviction which is supported by competent, substantial evidence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. Pagan v. State, 830 So.2d 792, 803 (Fla.2002), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003). The special standard of review applicable to wholly circumstantial cases is inapplicable here.

Analysis
The crime of aggravated assault on a law enforcement officer encompasses the following elements of assault: an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent. In addition, the assault must be made with a deadly weapon on a law enforcement officer engaged in the lawful performance of his duties. §§ 784.07(2)(c), 784.011(1), 784.021(1)(a), Fla. Stat. (2002). In his motion for judgment of acquittal on the Lockett Count, Sullivan contended that there was no legally sufficient evidence that Sullivan did some act that created a well-founded fear in Deputy Lockett that violence was imminent. We agree.
At the outset, we reject two of Sullivan's arguments. First, Sullivan contends that Deputy Lockett's drawing of his weapon made the commission of an aggravated assault impossible because the deputy would have shot Sullivan before violence became imminent. This argument is without merit. Deputy Lockett would have been authorized to use deadly force in response to an aggravated assault committed against him, but the possibility of such a response by the deputy would not have rendered Sullivan incapable of committing an aggravated assault.
Second, Sullivan places great emphasis on Deputy Lockett's testimony that during the episode, he did not believe that violence to him was imminent. However, for the purpose of assault, it is not always necessary for the victim to testify that he was afraid. Biggs v. State, 745 So.2d 1051, 1053 (Fla. 3d DCA 1999). Where "the circumstances were such as to ordinarily induce fear in the mind of a reasonable man, then the victim may be found to be in fear, and actual fear need not be strictly and precisely shown." Gilbert v. State, 347 So.2d 1087, 1088 (Fla. 3d DCA 1977). Thus, Deputy Lockett's subjective view of his lack of fear is not dispositive of the legal import of Sullivan's actions.
Our resolution of this case turns on whether there was legally sufficient evidence that violence to Deputy Lockett was imminent, so as to create in him the requisite well-founded fear. Sullivan points out *109 that from the time he emerged from the mobile home brandishing a knife until the time he dropped the knife, Deputy Wilder remained directly between Sullivan and Deputy Lockett, who was positioned behind a police cruiser no closer than thirty feet from Sullivan. "Imminent means near at hand, mediate rather than immediate, close rather than touching." Linsley v. State, 88 Fla. 135, 101 So. 273, 275 (1924) (defining "imminent" in the context of the defense of justifiable use of deadly force, which we find analogous to "imminent" in the context of assault). "Mediate" means "[a]cting through, involving, or dependent on an intervening agency" or "[b]eing in a middle position." The American Heritage Dictionary of the English Language 1091 (4th ed.2000). Thus, if violence is the event that is immediate or touching, then imminent violence is one step removed.
In this case, Sullivan's threat of violence against Deputy Lockett by the use of a knife was at least two steps removed, if not three steps. Directly in Sullivan's path was Deputy Wilder. Between Deputy Wilder and Deputy Lockett was the police cruiser behind which Deputy Lockett had positioned himself, no closer than thirty feet from Sullivan. Deputy Lockett had assumed his defensive position behind the cruiser before Sullivan emerged from the mobile home brandishing the knife. At that point, violence was unquestionably imminent as to Deputy Wilder. However, it was too remote from Deputy Lockett for the charge of aggravated assault to survive a motion for a judgment of acquittal.
In L.R. v. State, 698 So.2d 915 (Fla. 4th DCA 1997), the Fourth District reached the same conclusion on similar facts. The defendant, who was a teenager, was arguing with her adult cousin. The defendant ran into the kitchen, picked up a steak knife, and threatened to kill the victim. Between the defendant and the victim stood the defendant's mother, who was ten feet from the defendant. Id. Although the victim testified that she was in fear, her testimony was equivocal. Neither of the defendant's acts standing alone nor those acts coupled with the victim's testimony were sufficient evidence upon which the fact finder could return a verdict of guilty of aggravated assault. The defendant's motion for judgment of acquittal should have been granted for lack of evidence that the victim had a well-founded fear of imminent harm. Id.; see also Bell v. Anderson, 414 So.2d 550, 552 (Fla. 1st DCA 1982) (holding that a boater in a moving motorboat on a lake had no well-founded fear of violence from a threat of physical harm made by another boater seated in a rowboat at least thirty to forty feet away).
Sullivan's case presents stronger facts for reversal than L.R. Compared to L.R., a greater distance and an additional obstacle separated Sullivan and Deputy Lockett, who testified that he did not believe that the violence to him was imminent. This case is not like McClain v. State, 383 So.2d 1146 (Fla. 4th DCA 1980), in which nothing stood between the victims and the defendant, who silently pointed a knife at them in a threatening manner, apparently at close range.
The State argues that affirmance is proper because Sullivan had the ability to throw the knife, citing Willard v. State, 386 So.2d 869 (Fla. 1st DCA 1980). Willard was a "close case," id. at 871, on the following facts: The defendant entered a convenience store. While the store clerk was distracted, the defendant began to walk out with two six-packs of beer under his arm. The store clerk told him to stop. The defendant "turned and faced him and had what appeared to be the blade of a knife in his right hand." Id. at 870. The *110 defendant "did not say anything and did not step toward the clerk or brandish the knife, but the clerk was afraid that [the defendant] was going to stab him and he returned to the store. The two men had been about four to six feet apart." Id.
The defendant in Willard contended that the evidence failed to establish that he had the apparent ability to do violence or that he committed any act which created a well-founded fear of imminent violence. The court disagreed:
The ability to do violence was established by the presence of the knife because a knife may be thrown or used anytime it is in a person's possession. As for the commission of an act creating a well-founded fear of imminent violence, we believe that it is not necessary that the knife be brandished or that the perpetrator move toward the victim. Here, the evidence supports the finding that [the defendant] pulled the knife and turned toward the clerk when he was confronted with the accusation of the theft of the beer....
Id. at 871.
We find Willard distinguishable on its facts because there only four to six feet separated the defendant and the victim with no obstacles between them. Given that Willard was conceded to be a "close case," we are not willing to extend Willard's holding to the facts of this case.
Sullivan's ability to throw the knife requires further analysis because it is reasonable to assume that the knife, if thrown, could have traveled over the obstacles thirty feet and struck Deputy Lockett. At trial, Deputy Wilder acknowledged that Sullivan could have thrown the knife, but he agreed that "there was no indication that [Sullivan] was going to do anything of that nature."
The threat element of aggravated assault was met by Sullivan's threatening behavior, specifically his brandishing the knife and charging at the deputies. Thus Sullivan by his acts indicated that whatever violence he intended to do, he was going to do it while holding the knife. If Sullivan, by word or act, had threatened to throw the knife, then it would have been apparent that he had the ability to throw it, and violence to Deputy Lockett by way of a thrown knife could be said to have been imminent. As it was, however, Sullivan's threatening behavior did not include a threat to throw the knife, and violence was not imminent as to Deputy Lockett.

Conclusion
As noted above, the trial court granted Sullivan's motion for judgment of acquittal on the Wilder Count. Based upon the posture of this case in this court and the foregoing analysis, we are compelled to reverse Sullivan's judgment and sentence on the Lockett Count and remand this case to the trial court with directions that Sullivan be discharged.[5]
Reversed and remanded with directions.
STRINGER and VILLANTI, JJ., Concur.
NOTES
[1] "Suicide-by-cop," also known as "police-assisted suicide," is "[a] form of suicide in which the suicidal person intentionally engages in life-threatening behavior to induce a police officer to shoot the person. Frequently, the decedent attacks the officer or otherwise threatens the officer's life, but occasionally a third person's life is at risk." Black's Law Dictionary 1475 (8th ed.2004).
[2] "A court may correct clerical mistakes in its own judgments and records, nunc pro tunc, even after the term of court has expired, and such corrections generally relate back and take effect as of the date of judgment." Carson v. State, 489 So.2d 1236, 1238 (Fla. 2d DCA 1986) (citing Boggs v. Wainwright, 223 So.2d 316 (Fla.1969)).
[3] Because the State has not filed a notice of cross-appeal, we need not address the question of whether this court would have jurisdiction to hear such a cross-appeal under the unusual circumstances presented by this case.
[4] Despite our hypothesis about the trial court's intentions, we are not disposed to grant relief that the State has not requested.
[5] We note that Sullivan has served approximately one-half of his three-year mandatory minimum sentence.