66 So.3d 317 (2011)
S.P.M., Appellant,
v.
STATE of Florida, Appellee.
No. 2D10-2415.
District Court of Appeal of Florida, Second District.
June 15, 2011.
Rehearing Denied August 5, 2011.
James Marion Moorman, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Bartow, for Appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Sonya Roebuck Horbelt, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Affirmed.
*318 VILLANTI and LaROSE, JJ., Concur.
CASANUEVA, C.J., Concurs in result only with opinion.
CASANUEVA, C.J., Concurring in result only.
I concur in the affirmance only because binding case law mandates the result. However, I write to express my concern that our case law deviates from the plain meaning of the legislature's words in section 784.011(1), Florida Statutes (2009).
Among other offenses, the trial court adjudicated S.P.M. delinquent on count four in the petition for delinquency, a charge of aggravated assault. The criminal episode resulting in these proceedings involved a moment of road rage where a number of men all exited their vehicles at an intersection and confronted each other. At some point, S.P.M. wielded a tire iron, which was the deadly weapon utilized in the aggravated assault charge. Mr. Douglas Wright, Sr. (Mr. Wright) was the victim of this particular offense. The sum of the evidence regarding Mr. Wright's fear is contained in the following excerpt from the State's direct examination:
Q. Did [S.P.M.] ever point the tire iron in your general direction?
A. No, ma'am.
Q. Were you in a group that he pointed it at?
A. No, I was off to the side of that?
Q. Okay. Did you feel threatened by the tire iron?
A. Not the tire iron itself, no.
. . . .
Q. Did the defendant in any way physically, or with a weapon, without a weapon, verbally make any threats to you?
A. I know that when I was watching the other boy walk up in the corner of my eye, I could see him flinch toward me and that's what made my son throw the punch.
. . . .
Q. Was his fist balled up when he did that?
A. Yes, ma'am.
Q. How close was he?
A. Probably, like, two feet from me.
In cross-examination, Mr. Wright repeated that he was not threatened when S.P.M. wielded the tire iron:
Q. Now, you said you saw the white male with the tire iron?
A. Yes, ma'am.
Q. But your testimony is that you didn't think he was going to swing it at anyone, correct?
A. No, at me, I said he wasn't going to swing it at.
Q. And you didn't see him swing at anyone, correct?
A. No, he sure didn't.
Q. Okay. And you said you didn't feel threatened at all.
A. I wasn't in front of him when he was standing there with it, no.

THE STATUTE
An "assault" is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.
§ 784.011(1). An "aggravated assault" is an assault coupled with either the use of a deadly weapon without homicidal intent or with the intent to commit a felony. § 784.021(1).
Count four of the petition of delinquency charged that S.P.M.'s actions "did create a well-founded fear in [Mr. Wright] that *319 such violence was imminent and in the commission of said assault [S.P.M.] did use a deadly weapon, to wit: a tire iron." But Mr. Wright testified that he was not in fear and the State presented no other evidence to the contrary. Looking only to the plain meaning of the statute, the State failed to provide a prima facie case of assault because there was no evidence that the victim had any well-founded fear.

INTRODUCTION OF THE REASONABLE PERSON STANDARD
Case law has instituted the use of a reasonable person standard to satisfy the element of a well-founded fear when the victim does not testify regarding his or her subjective state of mind. Gilbert v. State, 344 So.2d 564 (Fla.1977) (Gilbert I), appears to be the progenitor of this practice. In less than 250 words, the supreme court did no more than quash a Third District decision because the district court had utilized cases which held that a well-founded fear of violence or imminent peril was not an element of aggravated assault. Id. at 565. The supreme court noted that it had already disapproved of those same authorities in a prior decision, State v. White, 324 So.2d 630, 631 (Fla.1975) (holding that "fear must be proved" and disapproving cases that had held that assault "does not require an awareness by the victim of imminent peril"). Thus, the Gilbert I court remanded for reconsideration in light of White. Gilbert I, 344 So.2d at 565.
On remand, the Third District considered whether "there was no evidence of well-founded fear on the part of the victim that violence was imminent." Gilbert v. State, 347 So.2d 1087, 1088 (Fla. 3d DCA 1977) (Gilbert II). The language of the opinion suggests that the victim did not testify regarding her state of mind. Nonetheless, the court found there was sufficient evidence:
[W]e find that the defendant's action in pointing the pistol at the victim's head in plain view of the victim and other persons present met all of the essential elements of aggravated assault. It is unlikely in the course of human events that a person in [the victim's] circumstances would not have a well-founded fear that violence is imminent when a pistol is pointed at her head.
Id. With this holding, the Third District replaced the subjective requirement of fear in the statute with an objective "reasonable person" standard for the first time.
Since the Gilbert opinions, other districts have allowed the application of the reasonable person standard in similar assault cases. For example, in L.R.W. v. State, 848 So.2d 1263 (Fla. 5th DCA 2003), L.R.W. chased the victim and then held a chair over her own head in a menacing manner while the victim was approximately six to seven feet away. The victim was laughing during the incident, but others in the room retreated. The victim did not testify. The Fifth District held:
There is . . . no requirement that the victim of an assault actually testify to his or her own state of mind. See McClain v. State, 383 So.2d 1146 (Fla. 4th DCA 1980). If the circumstances are such as would ordinarily induce fear in the mind of a reasonable person, then the victim may properly be found to have been in fear. See Gilbert v. State, 347 So.2d 1087, 1088 (Fla. 3d DCA 1977).
Id. at 1266. Even though the victim was laughing, the district court relied on the trial court's finding that the victim may have been laughing "out of fear, or out of a desire . . . to frustrate LRW's `design and intent' to injure her. Additionally, there was evidence that the other residents were *320 in fear for their safety because they retreated when LRW picked up the chair." Id. The court concluded that these inferences permitted the trial court to conclude that a reasonable person in the victim's place would have been in fear. Id.
In McClain v. State, 383 So.2d 1146, 1147 (Fla. 4th DCA 1980), Mr. McClain was convicted of two counts of aggravated assault when he pulled a knife on two grocery store employees who gave chase after they watched Mr. McClain pilfer a piece of meat. When confronted with the knife, the employees backed up. Id. Neither employee testified. Relying upon Gilbert II, the court held that the evidence was sufficient to prove the victims were in fear. McClain, 383 So.2d at 1147.
In Johnson v. State, 888 So.2d 691 (Fla. 4th DCA 2004), the defendant drove by a crowd and pointed a gun at the victim. He said to the victim "I missed the first time, but I won't miss this time." Id. at 693. The crowd, including the victim, "scattered." The victim did not testify. The court relied upon Gilbert II and McClain to affirm the convictions.
In Calvo v. State, 624 So.2d 838 (Fla. 5th DCA 1993), the victim testified but not about the fear element. Mr. Calvo tried to push his way into a news station past a security guard who was an off-duty law enforcement officer. Mr. Calvo was carrying a long bouquet of flowers, but the officer testified that he was carrying it like one would carry a long gun while hunting. Id. at 838. When Mr. Calvo tried to shove past him, the officer felt that the package actually contained a long instrument, and Mr. Calvo was definitely holding it like a rifle. The officer subdued Mr. Calvo and found the package to contain a shotgun. Id. at 839. Although the officer did not testify whether or not he had a well-founded fear that violence was imminent, the Fifth District held that the circumstances allowed the inference that a reasonable person would have been in fear, citing McClain. Calvo, 624 So.2d at 839.
This evolution of case law has allowed replacement of the statute's subjective standard of fear with a reasonable person standard when the victim does not testify regarding that element. While these prior opinions have found it appropriate to relax the statute's clear, subjective standard, none of the cases present a situation where the victim testified regarding the element at issue. In our case, Mr. Wright took the stand and affirmatively stated that he did not feel threatened. Application of the reasonable person standard is unnecessary because Mr. Wright provided competent, substantial evidence of his subjective emotional state at the time of the offense, which is what the statute's language requires. I believe this case law does not change the result mandated by the plain language of the statute. The State affirmatively disproved its own case through Mr. Wright's testimony.

THIS COURT'S DECISION IN SULLIVAN

In Sullivan v. State, 898 So.2d 105 (Fla. 2d DCA 2005), Mr. Sullivan was convicted of aggravated assault on a law enforcement officer. Mr. Sullivan made threats towards two officers when they responded to what they believed was a domestic disturbance call. The threats were sufficiently credible that the two officers took up defensive positions by their vehicles that were parked one behind the other. Mr. Sullivan emerged from his home breathing hard and brandishing a kitchen knife over his head. Despite repeated commands to drop the knife, Mr. Sullivan charged the officers. He did eventually stop and drop the knife before any physical harm was done.
*321 During trial, the officer who was the victim of the charged offense testified that "he did not believe that violence to him was imminent." Id. at 108. This court applied the language from Gilbert II and Biggs v. State, 745 So.2d 1051, 1053 (Fla. 3d DCA 1999) (applying Gilbert II to its own set of facts), and held that "it is not always necessary for the victim to testify that he was afraid." Sullivan, 898 So.2d at 108. However, this court ultimately overturned the conviction. We held that there was insufficient evidence of imminent violence because there was another officer between Mr. Sullivan and the victim, and Mr. Sullivan never got closer than within thirty feet of the victim. Id. at 109.
The fact that this court is bound by its prior decision in Sullivan is the only reason I concur with my fellow judges. Before Sullivan, the reasonable person standard from Gilbert II and its progeny had only been used when there was no direct evidence of the victim's fear or lack thereof. By utilizing a reasonable person standard in a case where the victim testified that he was not afraid and there was no evidence to the contrary, the Sullivan court essentially eliminated the subjective standard that the statute requires.
I respectfully disagree with this court's holding in Sullivan that the reasonable person standard should be applied even in the face of direct, uncontroverted evidence from the victim regarding his subjective state of mind. However, because I am bound by that precedent, I concur in result only.